COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-464-CV

 

 

IN THE INTEREST OF T.H. AND R.R.H.,                                                   

CHILDREN

                                                                                                           

 

                                                  ------------

 

             FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

I.  Introduction








Appellant J.H. appeals the
termination of his parental rights to his children, T.H. and R.R.H.  In eleven issues, J.H. argues that the
evidence is legally and factually insufficient to support the termination
order, that the trial court abused its discretion and infringed upon his
constitutional rights by proceeding with part of the termination trial in his
absence, and that family code sections 263.405(b) and 263.405(i) are
unconstitutional.  We will affirm.

II.  Brief Factual and Procedural Background

J.H. and A.S. had a five year
volatile, Astrifeful@ relationship.  They never
married, they lived together discontinuously, and domestic violence and illegal
narcotics use, which included marijuana and methamphetamines, occurred in the
relationship.

J.H. and A.S. had two
children together:  T.H., a son, and
R.R.H., a daughter.  R.R.H. was born at
twenty-five weeks= gestation
and tested positive for THC and marijuana. 
At the time of trial, T.H. was four years old and R.R.H. was three years
old.  Until their removal, T.H. and
R.R.H. always lived with J.H. and A.S. or J.H. when he and A.S. separated.

In June and July 2006, CPS
received two reports that J.H. and A.S. were using drugs in front of T.H. and
R.R.H. and that T.H. and R.R.H. were wandering the neighborhood unsupervised
for several hours.  CPS Asafety planned@ for the children
to be placed with J.H.=s mother,
B.H., but it eventually discovered that the children were back in J.H.=s care sometime in late July or early August 2006.  CPS additionally learned that there had been
seven domestic violence calls at J.H.=s residence between June and August 2006.








The Texas Department of Family
and Protective Services (ATDFPS@) removed T.H. and R.R.H. from J.H.=s care and filed its petition for protection of children, for conservatorship,
and for termination in suit affecting the parent-child relationship in August
2006.  At the time of the removal, T.H.
was naked and Avery dirty.@  R.R.H. was dirty, wore a
condom on her wrist as a bracelet, and had a rash on her face.[2]

CPS issued service plans to
both J.H. and A.S.  TDFPS=s initial plan was to eventually return T.H. and R.R.H. to J.H., but
J.H.=s July and October 2007 hair follicle tests came back positive for
amphetamines and methamphetamines, and CPS learned that J.H. had failed to
complete a batterer=s
intervention program that he had been ordered to complete.

The bench trial was on
November 5, 14, and 15, 2007.  J.H. was
arrested and incarcerated sometime between November 5 and November 14, and he
was consequently absent from trial on November 14 and part of November 15.  The trial court issued a bench warrant, and
J.H. returned to trial on November 15.








The trial court entered an
order terminating J.H.=s parental
rights to T.H. and R.R.H.  It found by
clear and convincing evidence that J.H. had knowingly placed or knowingly
allowed T.H. and R.R.H. to remain in conditions or surroundings which
endangered their emotional or physical well-being and that he engaged in
conduct or knowingly placed T.H. and R.R.H. with persons who engaged in conduct
which endangered their physical or emotional well-being.  See Tex. Fam. Code Ann. ' 161.001(1)(D), (E) (Vernon Supp. 2008).  The trial court also found by clear and
convincing evidence that termination of the parent-child relationship between
J.H. and T.H. and R.R.H. was in the children=s best interest.  See id.
' 161.001(2).  This appeal
followed.

III.  Evidentiary Sufficiency

In his first six issues, J.H.
challenges the legal and factual sufficiency of the evidence to support the
trial court=s section
161.001(1) and (2) conduct and best interest findings.

A.     Standards of Review








A parent=s rights to Athe
companionship, care, custody, and management@ of his or her children are constitutional interests Afar more precious than any property right.@  Santosky v. Kramer, 455
U.S. 745, 758B59, 102 S.
Ct. 1388, 1397 (1982); In re M.S., 115 S.W.3d 534, 547 (Tex. 2003).  AWhile parental rights are of constitutional magnitude, they are not
absolute.  Just as it is imperative for
courts to recognize the constitutional underpinnings of the parent-child
relationship, it is also essential that emotional and physical interests of the
child not be sacrificed merely to preserve that right.@  In re C.H., 89 S.W.3d
17, 26 (Tex. 2002).  In a termination
case, the State seeks not just to limit parental rights but to end them
permanentlyCto divest
the parent and child of all legal rights, privileges, duties, and powers
normally existing between them, except for the child=s right to inherit.  Tex. Fam.
Code Ann. ' 161.206(b);
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination
proceedings and strictly construe involuntary termination statutes in favor of
the parent.  Holick, 685 S.W.2d at
20B21; In re E.M.N., 221 S.W.3d 815, 820 (Tex. App.CFort Worth 2007, no pet.).

In proceedings to terminate
the parent‑child relationship brought under section 161.001 of the family
code, the petitioner must establish one ground listed under subdivision (1) of
the statute and must also prove that termination is in the best interest of the
child.  Tex. Fam. Code Ann. ' 161.001; In re J.L., 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established;
termination may not be based solely on the best interest of the child as
determined by the trier of fact.  Tex.
Dep=t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).








Termination of parental
rights is a drastic remedy and is of such weight and gravity that due process
requires the petitioner to justify termination by clear and convincing
evidence.  Tex. Fam. Code Ann. '' 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).  This intermediate standard falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re C.S., 208 S.W.3d 77, 83 (Tex. App.CFort Worth 2006, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex. Fam. Code Ann. ' 101.007 (Vernon 2002).








In reviewing the evidence for
legal sufficiency in parental termination cases, we must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  In re J.P.B., 180 S.W.3d 570, 573
(Tex. 2005).  We must review all the
evidence in the light most favorable to the finding and judgment.  Id. 
This means that we must assume that the factfinder resolved any disputed
facts in favor of its finding if a reasonable factfinder could have done
so.  Id.  We must also disregard all evidence that a
reasonable factfinder could have disbelieved. 
Id.  We must consider,
however, undisputed evidence even if it is contrary to the finding.  Id. 
That is, we must consider evidence favorable to termination if a
reasonable factfinder could, and disregard contrary evidence unless a
reasonable factfinder could not.  Id.

We must therefore consider
all of the evidence, not just that which favors the verdict.  Id.  But we cannot weigh witness credibility issues
that depend on the appearance and demeanor of the witnesses, for that is the
factfinder=s
province.  Id. at 573, 574.  And even when credibility issues appear in
the appellate record, we must defer to the factfinder=s determinations as long as they are not unreasonable.  Id. at 573.








In reviewing the evidence for
factual sufficiency, we must give due deference to the factfinder=s findings and not supplant the judgment with our own.  In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006).  We must determine whether,
on the entire record, a factfinder could reasonably form a firm conviction or
belief that the parent violated the relevant conduct provision of section
161.001(1) and that the termination of the parent=s parental rights would be in the best interest of the child.  C.H., 89 S.W.3d at 28.  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.  H.R.M.,
209 S.W.3d at 108.  If we reverse on
factual sufficiency grounds, then we must detail in our opinion why we have
concluded that a reasonable factfinder could not have credited disputed
evidence in favor of its finding.  J.F.C.,
96 S.W.3d at 266B67.

B.      Sufficient EvidenceCSection 161.001(1)(D) and (E) Findings

The trial court may order termination of the parent-child
relationship if it finds by clear and convincing evidence that the parent has
knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endanger the physical or emotional well-being of the
child.  Tex. Fam. Code Ann. ' 161.001(1)(D).  Endangerment is defined as exposing to loss
or injury, to jeopardize.  In re
J.T.G., 121 S.W.3d 117, 125 (Tex. App.CFort Worth 2003,
no pet.).  Under subsection (D), it is
necessary to examine evidence related to the environment of the child to
determine if the environment was the source of endangerment to the child=s physical or
emotional well-being.  In re D.T.,
34 S.W.3d 625, 632 (Tex. App.CFort Worth 2000,
pet. denied).  To support a finding of
endangerment, the parent=s conduct does not necessarily have to be
directed at the child, and the child is not required to suffer injury.  Boyd, 727 S.W.2d at 533.








The trial court may order termination of the parent-child
relationship if it finds by clear and convincing evidence that the parent has
engaged in conduct or knowingly placed the child with persons who engaged in
conduct that endangers the physical or emotional well-being of the child.  Tex. Fam. Code Ann. ' 161.001(1)(E).  Under subsection (E), the relevant inquiry is
whether evidence exists that the endangerment of the child=s physical or
emotional well-being was the direct result of the parent=s conduct,
including acts, omissions, and failures to act. 
J.T.G., 121 S.W.3d at 125. 
Termination under subsection (E) must be based on more than a single act
or omission; a voluntary, deliberate, and conscious course of conduct by the
parent is required.  Id.; D.T.,
34 S.W.3d at 634.

The specific danger to the
child=s well-being may be inferred from parental misconduct alone, and to
determine whether termination is necessary, courts may look to parental conduct
both before and after the child=s birth.  Boyd, 727
S.W.2d at 533; In re D.M., 58 S.W.3d 801, 812 (Tex. App.CFort Worth 2001, no pet.).  A
parent=s decision to engage in illegal drug use during the pendency of a
termination suit, when the parent is at risk of losing a child, supports a
finding that the parent engaged in conduct that endangered the child=s physical or emotional well-being. 
In re J.A., No. 02-05-00454-CV, 2006 WL 3114434, at *5 (Tex. App.CFort Worth Nov. 2, 2006, no pet.) (mem. op.).  As a general rule, conduct that subjects a
child to a life of uncertainty and instability also endangers the child=s physical and emotional well-being. 
See In re S.D., 980 S.W.2d 758, 763 (Tex. App.CSan Antonio 1998, pet. denied).








Because the evidence
pertaining to subsections 161.001(1)(D) and (E) is interrelated, we conduct a
consolidated review.  In re T.N.S., 230 S.W.3d 434,
439 (Tex. App.CSan Antonio 2007, no pet.); J.T.G.,
121 S.W.3d at 126.  The evidence
demonstrates that J.H. has engaged in conduct that subjected T.H. and R.R.H. to
a life of uncertainty and instability. 
Specifically, the evidence shows that J.H. used illegal drugs both
before and after TDFPS removed T.H. and R.R.H. from his care.  J.H. denied having a drug problem and denied
using drugs while caring for T.H. and R.R.H., but he admitted that he had used
heroin, methamphetamines, cocaine, and marijuana in the past.  J.H. admitted using methamphetamines sixteen
or seventeen months before trial, which was before TDFPS removed the children
from his care.  A.S. testified that J.H.
used methamphetamines and marijuana. 
J.H. took a hair follicle test on July 18, 2006; July 5, 2007; and
October 22, 2007.  The July 2006 test was
negative for illegal substances, but the July and October 2007 tests were
positive for amphetamines and methamphetamines. 
J.H. also told a CASA worker that a hair follicle test that he had
performed on his own came back positive.

A.S. resided with J.H. and
the children on and off over the course of her five year relationship with
J.H.  R.R.H. was born at twenty-five
weeks= gestation and tested positive for THC and marijuana.  A.S. admitted that she has a drug problem and
that her drug of choice has been marijuana.








J.H. admitted that domestic violence had occurred during
his relationship with A.S.  A.S.
testified that J.H. has punched and hit her and that she has gone to a shelter
as a result of the domestic violence.  A.S.
recounted that there had been five or six instances of family violence between
her and J.H. A.S. drafted an affidavit for TDFPS in which she stated that she
had Agrave concerns
regarding my family@ due to domestic violence and drug abuse. Between June and August 2006, there were seven domestic violence calls
at J.H.=s residence.  In June 2007, J.H.
entered a plea of nolo contendere to a charge of assault bodily injury to a
family member (A.S.); the offense had occurred in September 2006.  J.H.
exhibited anger issues that concerned others; for example, he had a number of
outbursts during visits with the children if he thought the visit was too
short.








On the first day of trial,
J.H. testified that he had a warrant out for his arrest because his probation
for the September 2006 offense had been revoked. Sometime after the first day
of trial but before the second day of trial, J.H. was arrested and scheduled to
be incarcerated for fifty days.  J.H.=s mother agreed that she has bailed J.H. out of jail more than five
times but less than ten times.          J.H.=s service plan required him to maintain a stable living environment, appropriate
housing, and employment and to complete a batterer=s intervention program, among other things.  J.H. denied having more than five residences
over the last five years, but he admitted that he had stayed in a hotel for a Atemporary transitional period.@  A police officer who responded
to the report that T.H. and R.R.H. were wandering the neighborhood unsupervised
described the residence where J.H. was living as Agenuinely dirty@ and in
disarray.  There were dishes with
half-eaten food, flies around the dishes, and screwdrivers and knives Awell within the reach of the children.@  At the time of the removal,
T.H. was naked and Avery dirty,@ and R.R.H. was dirty, wore a condom on her wrist as a bracelet, and
had a rash on her face.  While J.H.
testified that he has a job waiting for him after he is released from jail, a
CPS caseworker testified that J.H. never provided her with proof of employment.  According to the caseworker, J.H. was
terminated from a batterer=s intervention class in February 2007, but at trial he produced a
certificate of completion for the class dated October 2007, which was just before
trial began in November 2007.  J.H. lied
to the caseworker that he had completed the program at an earlier time.








Based on our review of the
entire record, we conclude that a factfinder could reasonably form a firm
belief or conviction that J.H. had engaged in conduct consistent with the trial
court=s subsection 161.001(1)(D) and (E) findings.  Therefore, we hold that the evidence is
legally and factually sufficient to support the trial court=s section 161.001(1)(D) and (E) findings.  See Tex. Fam. Code Ann. ' 161.001(1)(D), (E).  We
overrule J.H.=s first,
second, third, and fourth issues.

C.     Sufficient EvidenceCBest Interest Finding

Prompt and permanent
placement of the child in a safe environment is presumed to be in the child=s best interest.  Tex. Fam. Code Ann. ' 263.307(a) (Vernon 2002). 
There is also a strong presumption that keeping a child with a parent is
in the child=s best
interest.  In re R.R., 209 S.W.3d
112, 116 (Tex. 2006).  Nonexclusive
factors that the trier of fact in a termination case may use in determining the
best interest of the child include:

(1)     the desires of the child;

 

(2)     the emotional and physical needs of the child now and in the
future;

 

(3)     the emotional and physical danger to the child now and in the
future;

 

(4)     the parental abilities of the individuals seeking custody; 

 

(5)     the programs available to assist these individuals to promote
the best interest of the child;

 

(6)     the plans for the child by these individuals or by the agency
seeking custody;

 

(7)     the stability of the home or proposed placement;

 

(8)     the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and








(9)     any excuse for the acts
or omissions of the parent.

Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).

These factors are not exhaustive;
some listed factors may be inapplicable to some cases; other factors not on the
list may also be considered when appropriate. 
C.H., 89 S.W.3d at 27. 
Furthermore, undisputed evidence of just one factor may be sufficient in
a particular case to support a finding that termination is in the best interest
of the child.  Id.  On the other hand, the presence of scant
evidence relevant to each factor will not support such a finding.  Id.








Here, J.H. testified that he
has been the primary parent caring for T.H. and R.R.H. since they were born;
that he has always provided the children with food, clothing, and housing; and
that he has been continually employed since T.H. was born.  He testified that his visits with T.H. and
R.R.H. when they were in CPS=s custody went Awonderful,@ and a CASA worker who observed J.H. interact with the children opined
that the children Aobviously
love [J.H.].@  When J.H. was working, the children stayed at
a day care that J.H. claimed was Awritten up in a magazine as being one of the top 10 in the U.S.@  J.H. testified that he would
check the children into a pre-kindergarten program if they were returned to him
after the trial.  In addition to the
services that J.H. completed pursuant to his service plan, he testified that he
has been attending a Aself-based
recovery@ program at a church that is geared towards substance abuse treatment.

J.H.=s mother testified that J.H. is a loving, caring father that puts T.H.
and R.R.H. first.  She affirmed that she
would be willing to take care of the children on a temporary, but not
permanent, basis and to help J.H. any way she could.  She did not think that J.H.=s parental rights should be terminated.

T.H. and R.R.H.=s caseworker, however, testified that TDFPS=s unrelated adoption permanency plan for the children is in their best
interest.  She expressed concerns about
returning the children to J.H. because of the circumstances relating to his
substance abuse, domestic violence, anger management, employment,
transportation, and living arrangements.  
She opined that J.H. did not have the parenting ability to raise T.H.
and R.R.H. and that he could not provide a safe and healthy environment for
them.  The caseworker agreed that
granting the petition to terminate J.H.=s parent-child relationship with the children would ensure permanency
for the children in a structured, safe environment.








The CASA worker testified
that T.H. and R.R.H. had a lot of anger issues and were not used to Astructure@ after
removal but that they were doing Awonderful@ now.  She testified that the children were
participating in play therapy because of their anger issues, and she expressed
concern about J.H.=s drug
abuse, his refusal to acknowledge the drug abuse, and his own anger
issues.  The children no longer need to
take the medications they had previously been taking.[3]

Considering the entire
record, including evidence of J.H.=s continued substance abuse and failure to supervise the children, the
factors including the emotional and physical needs of the child now and in the
future, the emotional and physical danger to the child now and in the future,
the parental abilities of the individuals seeking custody, and the acts or
omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one weigh in favor of termination.  See Holly, 544 S.W.2d at 371B72.  Thus, based on our review
of the entire record, we conclude that a factfinder could reasonably form a
firm belief or conviction that termination of J.H.=s parental rights to T.H. and R.R.H. is in T.H.=s and R.R.H.=s best
interest.  We hold that the evidence is
legally and factually sufficient to support the trial court=s section 161.001(2) best interest finding.  See Tex. Fam. Code Ann. ' 161.001(2).  Accordingly,
we overrule J.H.=s fifth and
sixth issues.

 

 








IV.  Trial Absence and Motion for Continuance

In his seventh, eighth, and
ninth issues, J.H. complains that the trial court abused its discretion by
denying his motion for continuance and by proceeding with the trial in his
absence, that the continuation of the trial in his absence infringed upon his
constitutional rights, and that the trial court abused its discretion by
summarily denying his counsel=s request to continue the trial without considering any of the
relevant factors used to determine whether an inmate should personally attend court
proceedings.

A.     Constitutional Arguments
Not Preserved

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling,
if they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not
preserved, and the complaint is waived.  Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).  The objecting party must
get a ruling from the trial court.  Tex.
R. App. P. 33.1.  This ruling can be
either express or implied.  Frazier v.
Yu, 987 S.W.2d 607, 610 (Tex. App.CFort Worth 1999, pet. denied).








When there are multiple
defendants, as in this case, each defendant generally must lodge his own
objections in order to preserve error.  Bohls
v. Oaks, 75 S.W.3d 473, 477 (Tex. App.CSan Antonio 2002, pet. denied); Howard v. Philips, 728 S.W.2d
448, 451 (Tex. App.CFort Worth
1987, no writ) (AIt has been
held that in trials where multiple defendants participate, >a party must make his own objection to the evidence, or an exception
to the ruling of the court regarding the objection, if he wishes to preserve any
error for appeal.=@).








The first day of trial was
November 5, 2007.  J.H. was the only
witness to testify.  The trial court
recessed the trial at five o=clock, but J.H.=s testimony
had not yet concluded.  The trial resumed
on November 14, 2007.  J.H.=s attorney immediately advised the trial court that J.H. had been
arrested in DeSoto, that he was in jail, and that he was supposed to be
transferred to Dallas and then to Tarrant County.  Considering the lack of notice, J.H.=s counsel indicated that he could not get a bench warrant, and he
moved for a continuance.  The trial court
recommended that TDFPS call another witness and that J.H.=s testimony be concluded at another time.  J.H.=s counsel did not assert any objection to the continuation of the
trial on constitutional grounds.          The
trial continued in J.H.=s
absence.  After one witness testified and
in the middle of the cross-examination of the second witness, A.S.=s counsel stated that he Awould like to join [J.H.=s counsel=s] motion
for continuance@ and that A[w]e believe that [J.H.] has a constitutional right to be here.@  The trial proceeded and
eventually concluded for the day.

The trial resumed for a third
day on November 15, 2007.  The record
does not demonstrate that J.H. was present in the courtroom.  J.H.=s counsel did not move for a continuance or assert any objection to
J.H.=s absence on constitutional grounds at this time.  Approximately one hour and forty-five minutes
later, however, J.H.=s counsel
re-urged his objection to the trial proceeding in his client=s absence.  But the trial
proceeded, and the trial court stated, AI bench warranted him yesterday, and I don=t know why he=s not
here.  The Court has taken great lengths
to get him here.  I understand he=ll be here shortly.@  The record shows that J.H.
arrived in the courtroom at some point during the testimony of the fourth
witness to testify that day.








The record does not
demonstrate that J.H. lodged his own objection based on constitutional grounds
challenging the trial court=s decision to proceed with the trial. 
Although A.S.=s counsel
stated that Awe@ believe J.H. has a constitutional right to be at trial, A.S.=s counsel did not represent J.H. at trial, nor did J.H.=s counsel join in A.S.=s objection.  Morever, even
assuming that J.H. had joined in A.S.=s objection, A.S.=s counsel did not assert the objection until some point during the
cross-examination of the second witness to testify on November 14, 2007.  The objection was therefore untimely.  Consequently, J.S. failed to preserve for
appellate review his arguments that the continuation of the trial in his
absence infringed upon his constitutional rights and that the trial court
abused its discretion by denying his counsel=s request to continue the trial without considering any of the
relevant factors used in determining whether an inmate should personally attend
court proceedings.  See Tex. R.
App. P. 33.1(a); Bohls, 75
S.W.3d at 477; Howard, 728 S.W.2d at 451.  We overrule J.H.=s eighth and ninth issues.

B.      Motion for Continuance

Whether the trial court
grants or denies a motion for continuance is within its sound discretion.  See BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 800 (Tex. 2002).  A trial
court abuses its discretion if it acts in an arbitrary or unreasonable manner,
without reference to guiding rules and principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex.
1985).  A motion for continuance shall
not be granted except for sufficient cause supported by an affidavit, consent
of the parties, or by operation of law.  See
Tex. R. Civ. P. 251.  If a motion for
continuance is not made in writing and verified, it will be presumed that the
trial court did not abuse its discretion by denying the motion.  In re E.L.T., 93 S.W.3d 372, 375 (Tex.
App.CHouston [14th Dist.] 2002, no pet.).








Here, J.H. orally moved for a
continuance on November 14, 2007, and orally re-urged his motion for
continuance the following day.  The
record does not contain a written motion for continuance or an affidavit.  The record also does not reflect that the
parties consented to a continuance, nor does J.H. argue that a continuance
should have been granted by operation of law. 
Because J.H. did not comply with rule 251, the trial court did not abuse
its discretion by denying his oral motion for continuance.  See id.; In re T.D.N., No.
14-07-00387-CV, 2008 WL 2574055, at *1 (Tex. App.CHouston [14th Dist.] June 26, 2008, no pet.) (mem. op.) (holding that
trial court did not abuse its discretion by denying oral motion for continuance
because appellant did not comply with rule of civil procedure 251).  Accordingly, we overrule J.H.=s seventh issue.

V.  Section 263.405(b) and (i) Challenges








In his tenth and eleventh
issues, J.H. argues that family code sections 263.405(b) and (i) are
unconstitutional because they violate his right to due process and equal
protection under the United States and Texas constitutions. Because J.H. filed
a timely statement of points listing the issues raised on appeal, we need not
consider this issue.  See In re O.L.A.,
No. 02-06-00321-CV, 2008 WL 706335, at *8 (Tex. App.CFort Worth Mar. 13, 2008, no pet.) (mem. op.).[4]
 We overrule J.H.=s tenth and eleventh issues.

VI.  Conclusion

Having overruled all of J.H.=s eleven issues, we affirm the trial court=s order terminating his parental rights to T.H. and R.R.H.

 

DIXON W. HOLMAN

JUSTICE

PANEL: 
LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: 
November 6, 2008 











[1]See Tex.
R. App. P. 47.4.





[2]J.H.
claimed that R.R.H. had a ponytail band on her wrist.





[3]T.H.
had been taking lithium, Zyprexa, Clonidine, and another mood stabilizer.  R.R.H. was on Clonidine.





[4]We
have already ruled that family code section 263.405(i) is void as a violation
of the separation of powers provision of the Texas constitution.  See In re D.W., 249 S.W.3d 625, 645
(Tex. App.CFort
Worth 2008, pet denied).